UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| United States of America, | Case: 2:22-cr-20272 |
| Plaintiff, | Assigned To : Friedman, Bernard A. |
| | Referral Judge: Stafford, Elizabeth A. |
| v. | Filed 5/26/2022 |
| | IND USA V NIMO ET AL (LH) |
| D-1 Apollon Nimo, | 18 U.S.C. § 1349 |
| D-2 Farrah Bottris Bahoo, | |
| Defendants. | |
| _____/ | |

# INDICTMENT

THE GRAND JURY CHARGES:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. Fiat Chrysler Automobiles, also known as FCA US LLC, including its predecessor and successor entities (hereinafter FCA), was a company that manufactured automobiles under brand names such as Chrysler, Dodge, Jeep, and Ram. FCA conducted significant business operations in the Eastern District of Michigan, including in Auburn Hills, Michigan and elsewhere. FCA sold automobiles through independently-owned dealerships.

2. FCA administered various programs to provide discounts on the purchase or lease of a new FCA vehicle to FCA employees and people associated

1

with an FCA employee through specified relationships. One such discount plan was the Employee Purchase (EP) plan, which provided a five-percent discount from the factory invoice price for a FCA vehicle. The EP plan was available only to FCA employees and other qualified buyers with certain familial relationships to an FCA employee. To obtain an EP discount when purchasing or leasing a new FCA vehicle at dealership, a buyer was required to present an Employee Purchase Control Number (EPCN). The cost of an EP discount was passed on from the dealership to FCA.

3.  FCA also operated an incentive program, the Rewarding Excellence program, to reward salespeople for the sale or lease of an FCA automobile, by depositing funds onto a Bancorp prepaid Visa debit card. The Rewarding Excellence program was administered by ITA Group, located in the state of Iowa. The debit cards were managed by Bancorp, Inc. Bancorp, Inc.'s prepaid debit card operations were located in the state of South Dakota. When a qualified sale was reported to FCA, an FCA employee would transmit an electronic message over interstate wires to ITA in Iowa authorizing ITA to deposit funds onto the salesperson's debit card, which in turn would cause ITA to transmit a message to Bancorp over interstate wires.

4.  Parkway Chrysler Dodge Jeep Ram (Parkway CDJR) was an automobile dealership located in the Eastern District of Michigan.

## The Defendants

5.      APOLLON NIMO was a salesperson who worked at Parkway CDJR. NIMO sold or leased FCA vehicles at Parkway CDJR, often through a team of sales associates and other Parkway CDJR employees he directed. NIMO received a commission from Parkway CDJR for vehicles sold or leased by him or members of his sales team.

6.      FARRAH BOTTRIS BAHOO was a Parkway CDJR employee who worked on APOLLON NIMO's sales team. BAHOO began working with NIMO in approximately April 2016.

## Purpose of the Scheme to Defraud

7.      The purpose of the scheme to defraud was to obtain money by, among other things, the fraudulent sale and use of FCA Employee Purchase Control Numbers in conjunction with the sale or lease of new FCA vehicles.

## The Scheme to Defraud

8.      Between on or about January 13, 2014, to on or about April 30, 2021, APOLLON NIMO devised a scheme to defraud FCA by fraudulently using FCA EPCN to provide discounts to Parkway CDJR customers on the purchase or lease of new FCA vehicles, thereby increasing the volume of NIMO's sales and NIMO's compensation from FCA and Parkway CDJR.

9. It was part of the scheme to defraud that NIMO arranged for the sale or lease of FCA vehicles involving the fraudulent use of EPCN knowing that the customer was not eligible for the claimed discount.

10. It was part of the scheme to defraud that NIMO and BAHOO conspired with each other and with others to use FCA EPCN to obtain discounts for NIMO's customers for which the customers were not eligible.

11. It was part of the scheme to defraud that NIMO and BAHOO conspired with each other and with others to sell FCA EPCN to Parkway CDJR customers who were not eligible to receive FCA employee discounts.

12. The fraudulent use of EPCN to obtain discounts for Parkway CDJR customers for which the customers were not eligible resulted in sales and lease transactions that caused the transmission of electronic signals and messages on interstate wires to facilitate the funding of NIMO's rewards debit card account.

13. It was part of the scheme to defraud that NIMO and BAHOO communicated with Parkway CDJR customers by telephone and text messages, including about obtaining EPCN, the use of EPCN, the cost for EPCN, and payment to NIMO and BAHOO for EPCN.

14. It was part of the scheme to defraud that NIMO and BAHOO received payment from Parkway CDJR customers for EPCN and employee discounts by use of money transfer applications such as Venmo, Zelle, Apple Pay, and others. The

use of such applications caused the transmission of messages and signals across interstate wires.

## COUNT ONE
## 18 U.S.C. § 1349 - Conspiracy to Commit Wire Fraud

D-1 APOLLON NIMO
D-2 FARRAH BOTTRIS BAHOO

15. The allegations in paragraphs 1 through 14 are incorporated into this count by reference.

16. From on or about April 30, 2016, to on or about April 30, 2021, in the Eastern District of Michigan, and elsewhere, defendants Apollon NIMO and Farrah Bottris BAHOO, along with others known and unknown to the Grand Jury, did knowingly, intentionally, and willfully combine, conspire, confederate, and agree to commit wire fraud, that is, knowingly, willfully, and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing such pretenses, representations, and promises were false and fraudulent when made, transmit and cause to be transmitted, by means of wire, radio, and television communication, writings, signals, pictures, and sounds in interstate and foreign commerce for the purposes of

executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

## The Object of the Conspiracy

17. The object of the conspiracy was the same as the purpose of the scheme to defraud set forth in Paragraph 7 of this Indictment, which is realleged and incorporated by reference as though fully set forth herein.

## Manner and Means of the Conspiracy

18. In furtherance of this conspiracy, and to accomplish its object, the methods, manner, and means that were used are described in Paragraphs 1 through 14 of this Indictment and are realleged and incorporated by reference as though fully set forth herein.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

19. Pursuant to Fed. R. Cr. P. 32.2(a), the government hereby provides notice to the defendants of its intention to seek forfeiture of all proceeds, direct or indirect, or property traceable thereto, all property that facilitated the commission of the violations alleged, or property traceable thereto, and all property involved in, or property traceable thereto, of the violations set for in this Indictment.

20. <u>Substitute Assets</u>: If the property described above as being subject to forfeiture, as a result of any act or omission of Defendants:

      a. Cannot be located upon the exercise of due diligence;

      b. Has been transferred or sold to, or deposited with, a third party;

      c. Has been placed beyond the jurisdiction of the Court;

      d. Has been substantially diminished in value; or

      e. Has been commingled with other property that cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c).

21.   <u>Money Judgment</u>:  Upon conviction of the violation alleged in this Indictment, the United States will seek a forfeiture money judgment against Defendants in an amount equal to the total amount of proceeds obtained as a result of Defendants' violations of Title 18, United States Code, Section 1349 as alleged in this Indictment.

THIS IS A TRUE BILL

*s/Grand Jury Foreperson*
GRAND JURY FOREPERSON


DAWN N. ISON
United States Attorney


*s/John Neal*
JOHN NEAL
Chief, White Collar Crime Unit

*s/Mark Chasteen*
MARK CHASTEEN
Assistant United States Attorney

Dated: May 26, 2022

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes   ☒ No | AUSA's Initials: |

**Case Title:** USA v. D-1 Apollon Nimo, D-2 Farrah Bottris Bahoo

**County where offense occurred:** Macomb

**Check One:**   ☒ Felony   ☐ Misdemeanor   ☐ Petty

____Indictment/____Information --- **no** prior complaint.
✓ Indictment/____Information --- based upon prior complaint [Case number: 21-mj-30198 ]
____Indictment/____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____   **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.

May 26, 2022
Date

Mark Chasteen
Mark Chasteen
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: 313-226-9555
Fax:    313-226-7823
E-Mail address: Mark.Chasteen@usdoj.gov
Attorney Bar #:

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.