UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

D-1 Apollon Nimo,

Defendant.

Case No. 21-cr-20272 (BAF)(EAS)

Hon. Bernard A Friedman

---

**Defendant Nimo's Motion to Suppress Search of Mobile Phone**

Defendant Apollon Nimo moves this Court to suppress evidence obtained from the execution of a search and seizure warrant for his mobile telephone (cellular telephone (xxx) xxx-0652), as well as the fruits of such evidence.[1]

Based on the substantial showing that there were reckless omissions from the warrant affidavit undermining probable cause, Nimo moves for a *Franks* hearing. Pursuant to Local Rule 7.1, the government was contacted; the government opposes the relief sought.

---

[1]     The search warrant application for the cellular phone will be filed under seal as Exhibit 1. Nimo reserves the right to challenge the search of his laptop and iPad tablets to the extent the government obtained electronic communications from a search of these devices. This search warrant application is attached as Exhibit 6 and is nearly identical to Exhibit 1.

## Preliminary statement

This is one of the rare search warrants that demands a closer look by this Court.

Nimo worked at the Parkway Chrysler Dodge Jeep Ram dealership in Clinton Township, Michigan.  For most of the period relevant to this case, Nimo was the top salesperson in the country for Stellantis vehicles.  (This brief will refer to Stellantis as "FCA.")  He was under investigation since at least 2018 by the Clinton Township Police and then the federal government for fraudulent use of employee discount pricing in connection with the sale of FCA vehicles.

On April 28, 2021, a warrant to search his mobile phone was issued.  However, the affidavit supporting the warrant does not establish probable cause to believe evidence of fraud will be on the phone.  Nor was there any cause to believe evidence would be found within the text messages on the phone.

The links between Nimo's mobile phone and fraud in the affidavit are miniscule.  Those links are weakened further because they were offered by the affiant with reckless indifference for the truth.  Here, the affiant failed to inform the magistrate that the information provided by the government's only informant linking fraud to Nimo's mobile phone was contradicted by another witness.  The Sixth Circuit has held such omissions to constitute bad faith or "reckless indifference for truth."  *United States v. West*, 520 F.3d 604, 611–12 (6th Cir.

2

2008).  When the omitted material is considered, there is no probable cause to search Nimo's mobile phone. (This brief and the exhibits filed under seal establish a substantial showing of recklessness entitling Nimo to a *Franks* hearing.)

All that remains to link evidence of fraud to Nimo's phone is the affiant's unexplained belief that criminal coconspirators use cell phones and text messages to communicate.  This does not—and cannot—establish probable cause.  *United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994) (holding affiant's training and experience statement was nothing "more than a guess that contraband or evidence of crime would be found" in the location searched and could not contribute to probable cause).

To uphold this search is to give the government access to search the mobile phone of anyone suspected of a crime.   The Fourth Amendment was created to protect against this kind of general warrant.

The evidence from this warrant and all the warrants that flowed from it must be suppressed.  The good faith exception to the exclusionary rule does not apply here because of recklessness and bad faith, making reliance on the warrant unreasonable.  *United States v. Leon*, 468 U.S. 897, 923 (1984).

## The search warrant affidavit

The following information in the search warrant affidavit attempts to link Nimo and Nimo's mobile phone to the employee discount fraud described above. The affidavit describes generally how the FCA employee discount program operates. A FCA employee uses his or her employee number, along with other personal identifying information, to generate an employee discount control number ("EPCN") that can be used to get employee pricing for the employee and family members. An new EPCN is generated for each vehicle sale or lease.

1.   <u>I.S. and C.W.</u>

In the affidavit, informant I.S. is the only source of information who alleges to have personal knowledge of Nimo's involvement in the purchase or sale of FCA EPCNs. According to the affidavit, I.S. claimed Nimo offered to sell a FCA EPCN for $600 during sales negotiations; however, I.S. did not purchase the number from Nimo because he was able to obtain one from C.W. (Exhibit 1, at ¶25(b).)

I.S. told the government that his father, who owns a store in Toledo, Ohio, advised him to speak with C.W, which I.S. did. (Id. at ¶25(c). According to I.S., C.W. provided I.S. with C.W.'s FCA employee number, date of birth, and end date of employment with FCA. (Id. at ¶25(d)). I.S. then used this information to log into the FCA portal and generate a FCA EPCN.

I.S. stated Nimo helped him navigate the portal, but could not remember if it was done over the phone. (Id. at ¶ 24.) FCA provided information that C.W.'s information was used in the FCA employee portal to generate an FCA EPCN. (Id. at ¶ 23(a).) On the same day, toll records established I.S.'s phone and Nimo's mobile phone called each other once (two calls total). (Id. at ¶ 26.) There was no evidence presented of text messages between Nimo's mobile phone and I.S.

C.W. provides no information concerning Nimo's mobile phone. He does provide evidence inconsistent with I.S.'s statements. C.W. told the government "he has no idea how I.S. managed to obtain an EPCN from him." (Id. at ¶24.) According to C.W., he provided his FCA employee number to a dealership in Michigan over the phone, but did not provide any other information. (Id. at ¶24.)

2. <u>Stellantis provided no information concerning Nimo's phone</u>

The affidavit provides a conclusion by unidentified individuals associated with FCA that Nimo "unlawfully sold FCA employee numbers . . . to facilitate the sale and/or lease of FCA vehicles from 2014 to [2020]." (Id. at ¶5.) FCA provides various sales statistics to support its conclusion. There is no evidence provided by FCA concerning Nimo's mobile phone. There is no evidence provided by FCA suggesting Nimo is involved in the purchase or sale of FCA EPCNs.

3.   <u>Facebook evidence</u>

The affidavit provides evidence received from Facebook, including evidence of members of two Facebook groups—"Chaldean Men of Detroit (and Worldwide)" and "Chaldeans Mens Only (The Official Page of Chaldean Men Worldwide)"—offering to buy and sell FCA EPCNs.  (Id. at ¶¶ 27–41.)

Nimo is not a member of these groups.  Accordingly, there is no evidence of Nimo offering to buy or sell FCA EPCNs.

There is no evidence any of these proposed FCA EPCN transactions were consummated.  And with one exception, N.M., there is no evidence any of the Facebook members referenced in the affidavit purchased a car through Nimo.

According to the affidavit, N.M. leased two vehicles from Nimo in November 2015 and January 2018.  (Id. at ¶ 36.)  In addition, a wife/relative of N.M. (and residing at N.M.'s residence) leased a vehicle from Nimo in March 2018.  (Id.)  Then on August 8 and 9, 2019, according to Facebook records, N.M. sought to purchase a FCA EPCN online.  Nimo's mobile phone and the number associated with N.M. were in contact twice on August 15, 2019.

There is no evidence that N.M. (or someone associated with him) leased or purchased a vehicle from Nimo after N.M. offered to purchase a FCA EPCN on Facebook.

Nor is there evidence of any text messages establishing such.

4.      The Sterling Heights Dodge Chrysler Jeep Ram sales manager.

An unidentified sales manager at Sterling Heights Dodge Chrysler Jeep Ram informed agents that C.D. "approached one of his sales associates in 2019 and offered to sell her FCA EPCNs." (Id. at ¶19.)  The sales manager's basis of knowledge is not stated in the affidavit (personal knowledge, hearsay, speculation, etc.).  Also, according to the Sterling Heights Chrysler Jeep Ram sales manager, the sales associate told him that C.D. told her that C.D. sells FCA EPCNs to Nimo. (Id.)

The affidavit states no connection between C.D. and Nimo's mobile phone.

5.      The sales manager's attorney

The affiant received an email from the Sterling Heights sales manager's attorney on July 10, 2020 "that stated a person known as S.Y. approached a salesperson at the manager's dealership and offered to sell her EPCNs."  (Id.)  The attorney also provided a contact number for S.Y.  Facebook records revealed that the number associated with S.Y. was also associated with a member of the Facebook group, Chaldean Men of Detroit (and Worldwide).

There is no information that S.Y. offered to buy or sell FCA employee price control numbers on Facebook.  Toll records establish that Nimo's mobile phone and the number associated with S.Y. were in contact from March 25, 2019 to August 25, 2020 and *one text message* was sent on December 5, 2019.  (Id. at ¶ 22).

7

3. October 8, 2019 undercover visit to Nimo

The affiant describes an October 8, 2019 undercover visit to Nimo to discuss purchasing FCA employee price control number.[2]

The evidence is that Nimo told undercover agents, in response to agents' statements asking to purchase a FCA employee price control number from him, "I can't get no more of these numbers. That's the problem." (Id. at ¶ 18.)  When the meeting ended, Nimo said "I'll start the paperwork wait a few days; see if you can find one." (Id.)  The undercover agents took Nimo's business card that listed his mobile phone number.

4. The affiant's belief that criminal conspirators use mobile phones

The affiant states as follows.

I know that individuals who conspire with one another to conduct illegal activities often do so through the use of cell phones and other electronic devices.  These devices are used to communicate through social media and/or contact one another by voice or text messaging.  Based on the facts set forth above, I believe that Nimo and others have communicated through such methods regarding the fraudulent use of EPCN.

(Id. at ¶ 44.)

---

[2]     This undercover visit was recorded, but as of today's date, undersigned counsel has been unable to view it.  The government has produced the video, but due to technical issues, it cannot be viewed yet.

**Argument**

The search warrant for Nimo's mobile phone was issued without probable cause.  And even if there was probable cause to search the phone, there was not probable cause to search it for text messages.

The good faith exception will not stop operation of the exclusionary rule in this case because probable cause, if any, was based on information that the affiant presented with a reckless disregard for the truth.

Unless an exception applies, the Fourth Amendment requires a warrant to search one's mobile phone.  *Riley v. California*, 134 S. Ct. 2473, 2491 (2014). When applying for a warrant, "the affidavit presented must contain adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant." *Whitley v Warden*, 401 U.S. 560, 564 (1971).

To search, the Fourth Amendment requires more than "a reasonable ground for belief of guilt specific to the suspect, . . ." *United States v. Baker*, 976 F.3d 636, 646 (6th Cir. 2020) (quoting *United States v. Savoca*, 761 F.2d 292, 297 (6th Cir. 1985)).  A search warrant affidavit must establish there is probable cause to believe evidence of a crime *will be in a specific place* and not merely that the owner of property is suspected of crime." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (emphasis added).

The Supreme Court has never quantified "probable cause"—indeed, it is a "fluid concept." *Illinois v. Gates*, 462 U.S. 213 (1983).  The probable cause standard does not require a showing that a belief "be . . . more likely true than false."  *Texas v. Brown*, 460 U.S. 730, 742 (1983).  But "bare suspicion" and "mere suspicion" are not enough.  *Brinegar v. United States*, 338 U.S. 160, 175 (1949); *Mallory v. United States*, 354 U.S. 449, 454 (1957) (mere suspicion).  And more must be required than "reasonable suspicion," which justifies certain searches and seizures considered less intrusive.  *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (stating the "reasonable suspicion" standard in *Terry v. Ohio* is "obviously less demanding than that for probable cause").[3]

## A.  The search warrant was issued without probable cause to search the mobile phone.

The evidence linking FCA employee discount fraud to Nimo's phone is remarkably thin and was offered by the affiant with reckless disregard for the truth. The remaining evidence was not reasonably relied upon by the magistrate or affiant.  When taking into account the affidavit and the omitted information, the search warrant issued without probable cause.

---

[3]     Supreme Court dictum, albeit in an old case concerning probable cause for arrest, suggests a one in three probability is insufficient.  *Mallory*, 354 U.S. at 456.

The only evidence in the warrant affidavit potentially linking FCA employee discount fraud and Nimo's mobile phone is (i) a December 20, 2018 call with I.S. corresponding with access to C.W.'s account in the FCA employee portal, (ii) contact and one text message between Nimo's mobile phone and S.Y. (an alleged FCA employee price control number dealer), (iii) evidence that nine Facebook members, who sought to buy or sell FCA EPCNs online, were in contact with Nimo's mobile phone, and (iv) the affiant's statement that he "know[s] that individuals who conspire with one another to conduct illegal activities often do so through the use of cell phones and other electronic devices."

1.    Information from I.S. was provided with reckless disregard for truth.

The discovery provided by the government establishes the affiant failed to inform the magistrate that I.S.'s statements were not corroborated and, in fact, contradicted.  Under circumstances such as these, the Sixth Circuit has found information was presented to the magistrate with reckless indifference for the truth. *United States v. West*, 520 F.3d 604, 611–12 (6th Cir. 2008).

The affidavit must be viewed as a whole, taking into account the "totality of the circumstances and the omitted information."  *Id*.  A warrant is invalid where the remaining evidence is insufficient to establish probable cause.  *United States v. Duval*, 742 F.3d 246, 250–51 (6th Cir. 2014).

Taking into account the circumstances and omitted information, there is no probable cause to search Nimo's mobile phone.  The search warrant affidavit is intentionally vague as to who was present at the meeting where I.S. claims Nimo offered to sell a FCA EPCN for $600. (Exhibit 1, ¶ 25(a)–(b).)  A review of discovery revealed that I.S. was interviewed on July 31, 2020 (before the warrant application) and told the affiant there was a third person at the meeting—D.H. (The interview memo of I.S. is filed under seal as Exhibit 2.)

When D.H. was interviewed by the affiant on August 18, 2020 (also before the warrant application), he stated Nimo never offered to sell I.S. a FCA EPCN. (The interview of D.H. is filed under seal as Exhibit 3.)  According to D.H., I.S. had a family friend in Ohio, who gave I.S. an employee discount number.  (Exhibit 3.)

In addition, the affiant failed to disclose information provided by C.W. did not corroborate I.S.'s statements.  Not only did C.W. deny giving I.S. his date of birth, date of termination, and the last four digits of his social security number (I.S. claims C.W. provided him all these things), C.W. told the affiant he would not provide these things to I.S. because he said (while he was looking at I.S.'s picture) he does not conduct business with "foreigners."  (The interview memo of C.W. is filed under seal as Exhibit 4.)  This is important because the affiant also omitted information received from FCA that an employee number without more, is

12

insufficient information to generate a FCA EPCN online (as I.S. alleged Nimo

helped him do).  (The memo documenting information received from FCA is filed

under seal as Exhibit 5.)

Under *Franks v. Delaware*, "a search warrant is invalid when the supporting

affidavit contains a statement, necessary to the finding of probable cause, that is

later demonstrated to be false and included by an affiant knowingly and

intentionally, or with a reckless disregard for the truth." *United States v. Duval*,

742 F.3d 246, 250–51 (6th Cir. 2014) (citing *Franks v. Delaware*, 438 U.S. 154

(1978)).  *Franks* "also extends to circumstances in which an officer omits evidence

in a search-warrant affidavit that is critical to determining the existence of probable

cause." *Id*. (citing *United States v. Carpente*r, 360 F.3d 591, 596 (6th Cir. 2004)

(en banc).

An affiant acts with "reckless disregard for the truth" where he withholds

information that other witnesses and investigative steps failed to corroborate an

informant's statements.  *West*, 520 F.3d at 611–12 (suppressing evidence from

search of residence and vehicle).

In *West*, the affidavit to search W's van was based on information provided

to police by T.  *West*, 520 F.3d at 608.  According to T, while in M's driveway, W

confessed to killing a woman, placing her in his van, and transporting the body to

hide it in a well.  *Id*.  The "affidavit did not reveal any of [the affiant's]

unsuccessful attempts to corroborate [T's] statements, . . ." *Id*.  Of great weight to the Sixth Circuit was omitting the interview of M, who failed to corroborate the fact W confessed in M's driveway.  *Id*.  The affidavit also failed to mention that, despite extensive searching, the woman's body was never found.

*West* is not distinguishable from this case.  Here, the information connecting evidence of FCA employee discount fraud and Nimo's mobile phone is "weak and sparse."  *Id*. at 611.  In addition, the affiant did not inform the magistrate that D.H. failed to corroborate, and in fact contradicted, I.S.'s statements.  *Id*. (This is more serious than the omission in *West* where the witness simply failed to corroborate.) Nor did the magistrate understand that C.W. vehemently denied giving I.S. sufficient information to generate a FCA employee price control number (as I.S. claimed he did).

*       *       *

When the omitted material is considered, there is no reasonable cause to believe that Nimo or Nimo's mobile phone were involved in criminal conduct concerning I.S.'s use of a FCA EPCN.  Because the remaining evidence is insufficient to establish probable cause, the search warrant for Nimo's mobile phone was invalid.

2.  <u>Hearsay evidence from the sales manager's attorney concerning S.Y.</u>
    <u>should be ignored.</u>

It is well settled that "[a] judicial officer may rely on hearsay evidence,"

*United States v. Smith*, 182 F.3d 473, 477 (6th Cir.1999), but only "so long as a

substantial basis for crediting the hearsay is presented." *Illinois v. Gates*, 462 U.S.

213, 241–42 (1983); s*ee also United States v. Helton*, 314 F.3d 812, 819 (6th Cir.

2003).  Because there was no basis, let alone a "substantial basis," for crediting the

hearsay evidence concerning S.Y., it may not be relied upon to establish probable

cause here.

The affiant received information from the attorney of a sales manager at

Sterling Heights Dodge Chrysler Jeep Ram.  According to the attorney, S.Y.

offered to sell FCA EPCN to a sales associate at this dealership, not the sales

manager/client.  The attorney also provided a contact number for S.Y. that is

associated with a member of the Facebook group, Chaldean Men of Detroit (and

Worldwide) and was in contact with Nimo's mobile phone.  (There were calls from

March 25, 2019 to August 25, 2020 and one text message was sent on December 5,

2019.)  (Exhibit 1, ¶ 22.)

The basis of knowledge of the sales manager and sales associate is unknown.

(Was the information based on personal knowledge of the sales associate or sales

manager or information relayed to them?)  There are no statements from the affiant

concerning the known veracity or reliability of the sales manager.  And there is no corroboration of the information provided.

Nothing is offered by the affiant to credit the hearsay information provided by the sales manager's attorney.  Accordingly, it cannot be relied upon.

3. <u>The Facebook evidence does not provide probable cause to search Nimo's mobile phone.</u>

The Facebook evidence establishes there are not reasonable grounds to search Nimo's mobile phone.  Although certain Facebook group members offered to buy and/or sell FCA EPCNs online, Nimo was not a member of these Facebook groups or involved in any of these communications.  The only link to Nimo's mobile is that some of these Facebook members called the phone. That's it—no more.

This does not establish reasonable grounds to believe evidence of FCA employee discount fraud will be found on Nimo's mobile phone.  *Helton*, 314 F.3d at 821 ("Surely, the fact that a person averages three phone calls a month to a drug dealer does not create a probability that the person has contraband in their house.").

A close review of the Facebook evidence establishes no reason to believe Nimo was involved with the fraudulent use of employee control numbers with these individuals.   With one exception, there is no evidence any of these individuals purchased vehicles from Nimo.

N.M is the exception.  Based on the facts in the affidavit noted above, the reasonable inference from the Facebook evidence is that N.M. purchased a FCA EPCN from someone other than Nimo.  Moreover, according to the affidavit, N.M. did not purchase a vehicle from Nimo any time after offering to buy an EPCN on Facebook.

There is not likely evidence of FCA employee discount fraud on Nimo's mobile phone.  People with access to FCA employee discount numbers are likely to inquire about purchasing/leasing FCA vehicles and, if they live in the Detroit area, it is unremarkable such people would call Nimo's mobile phone.

4. The affiant's bald assertions concerning "criminal conspirators" using mobile phones cannot establish probable cause.

The affiant attempts to create probable cause to search Nimo's phone by stating he "knows that individuals who conspire with one another to conduct illegal activities often do so through the use of cell phones."  This cannot be allowed to establish probable cause.  Doing so "would be to invite general warrants authorizing searches of *any* property owned, rented or otherwise used by a criminal suspect." *United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994).

An officer's "training and experience" cannot "substitute for the lack of [an] evidentiary nexus" between the place to be searched and criminal activity.  *United States v. Schultz,* 14 F.3d 1093, 1097 (6th Cir. 1994) (finding warrant issued without probable cause but applying good faith exception because no evidence of

17

recklessness or bad faith).  While these statements may allow operation of the good faith exception in sum circumstances not present here, it is insufficient to establish probable cause.

**B.    The search warrant was issued without probable cause to search text messages.**

Even if this Court finds there was probable cause to search Nimo's mobile phone, there was not probable cause to search it for text messages.

The Supreme Court has recognized that "[a] phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is."  *Riley v. California*, 134 S. Ct. 2473, 2491 (2014).

An affidavit to search a mobile phone must establish probable cause to find information may reasonably be found within the "places" on the phone law enforcement seeks to look.  *United States v. Chandler*, 571 F.Supp.3d 836, 842–43 (E.D. Mich. 2021) (Lawson, J.) (finding a search warrant "affidavit did establish probable cause to search for information in some but not all the 'places' on the defendant's cell phone").  In *Chandler*, although the Fifth Circuit' panel opinion in *United States v. Morton* was vacated for misapplication of the good faith exception, Judge Lawson nevertheless adopted its reasoning.  *Id*. (citing *United States v. Morton*, 984 F.3d 421 (5th Cir. 2021), *reh'g en banc granted*, *opinion vacated*, 996 F.3d 754 (5th Cir. 2021)).

18

> *Riley* made clear that these distinct types of information, often
> stored in different components of the phone, should be analyzed
> separately. This requirement is imposed because "a cell phone's
> capacity allows even just one type of information to convey far
> more than previously possible." *Id*. at 394, 134 S.Ct. 2473. Just
> by looking at one category of information—for example, "a
> thousand photographs labeled with dates, locations, and
> descriptions" or "a record of all [a defendant's] communications
> ... as would routinely be kept on a phone"—"the sum of an
> individual's private life can be reconstructed." *Id*. at 394–95,
> 134 S.Ct. 2473. In short, *Riley* rejected the premise that
> permitting a search of all content on a cellphone is "materially
> indistinguishable" from other types of searches. *Id*. at 393, 134
> S.Ct. 2473. Absent unusual circumstances, probable cause is
> required to search each category of content. *Id*. at 395, 134
> S.Ct. 2473 (stating that "certain types of data" on cellphones
> are "qualitatively different" from other types); *id*. at 400, 134
> S.Ct. 2473 (analyzing data from a phone's call log feature
> separately); *see also Carpenter v. United States*, ⸺ U.S. ⸺,
> 138 S. Ct. 2206, 2217, 201 L.Ed.2d 507 (2018) (analyzing data
> from a phone's cell tower location signals separately).

*Morton*, 984 F.3d at 426.

For the reasons stated above, the calls between Nimo's mobile phone and

Facebook group members, who bought or sold FCA EPCN numbers, do not

establish a reasonable probability that there will be evidence of EPCN fraud on

Nimo's mobile phone.  But even if there was probable cause to search Nimo's

mobile phone (and there was not), there is no probable cause to search for text

messages.

There is too little connecting any EPCN fraud to text messages on Nimo's

mobile phone.  In fact, there are so few text messages mentioned in the affidavit

(four in total after a years-long investigation), the affidavit arguably establishes there is little reason to believe evidence of EPCN fraud would be found within texts on Nimo's mobile phone.

There is one text message between the number associated with S.Y. and Nimo's mobile phone on December 5, 2019. (Exhibit 1, ¶ 22.)  For the reasons stated above, no magistrate or well-trained agent would reasonably rely on the information concerning S.Y.  And in any event, one text between Nimo's mobile phone and the number associated with S.Y. suggests that there is little likelihood of finding evidence of EPCN fraud in the texts on Nimo's mobile phone.

## C.      The exclusionary rule applies in this case.

The "good faith" exception to the exclusionary rule does not apply in situations where there is not an objectively reasonable basis for believing that a warrant was valid.  *United States v. Leon*, 468 U.S. 897, 905 (1984).

Reliance cannot be objectively reasonable where the affiant omits evidence undermining the credibility of an informant and the informant's information.  *West*, 520 F.3d at 612 (holding good faith exception does not apply because the affiant "knew that his affidavit was incomplete and misleading to the issuing magistrate, and as such, he cannot be held to have reasonably relied on the search warrant") Here, as established above, I.S.'s statements were presented with reckless disregard for the truth and there were material omissions concerning the only link

between fraud and Nimo's mobile phone, significantly undermining any probable cause.

*          *          *

When the exclusionary rule applies, it extends not only to the direct product of government illegality (here, the search of Nimo's mobile phone), but also to the secondary evidence that is the "fruit of the poisonous tree." *Nardone v. United States*, 308 U.S. 338, 341 (1939). The search warrant for Nimo's phone spawned warrants for the search of the phone associated with number (xxx)xxx-6688, the residence located in Sterling Heights, Michigan, and an iCloud account. (These warrant applications are attached as Exhibits 7, 8, and 9, respectively.)

## D.   Nimo requests a *Franks* hearing based on a substantial showing of recklessness.

Nimo is entitled to a *Franks* hearing. Establishing that the affiant did not include omitted information contradicting I.S. is sufficient to necessitate a *Franks* hearing because I.S. was central to establishing a link to Nimo's mobile phone.

The purpose of a *Franks* hearing is to decide whether an affidavit used to secure a search warrant "contain[s] false statements or material omissions that were inserted or omitted with intentional or reckless disregard for the truth." *Duval*, 742 U.S. at 251 (emphasis in original) (quoting the district court's order).

There is a higher bar to obtain a *Franks* hearing in cases of omitting evidence from a search warrant affidavit. *Mays v. City of Dayton*, 134 F.3d 809,

21

815 (6th Cir. 1998). "To merit a hearing, the defendant must make a preliminary showing that the affiant engaged in deliberate or reckless disregard of the truth in omitting information from the affidavit." *United States v. Graham*, 275 F. 3d 490, 506 (6th Cir. 2001).

Establishing omission of a witness interview that contradicted an informant's information is a sufficient showing to obtain a *Franks* hearing. *See West*, 520 F.3d at 611–12.

Here, such preliminary showing was made above. Indeed, the exhibits establish omissions at least as serious and central to the probable cause finding as in *West*, a case in which the Sixth Circuit held the omissions were made with reckless indifference for truth and suppressed evidence. *Id*.

## Conclusion

For the reasons stated above, the evidence obtained from the search of Nimo's mobile phone should be suppressed, as well as the fruits of this evidence. This Court should order a *Franks* hearing because there has been a substantial showing of reckless indifference for the truth.

Respectfully submitted,

/s/ Patrick J. Hurford
Patrick J. Hurford (P82903)
645 Griswold St., Suite 1717
Detroit, MI 48226
Tel: (313) 938-0693
E-mail:  patrick@hurford.law

Date:  September 16, 2022

## **CERTIFICATE OF SERVICE**

I hereby certify that on, I electronically filed the foregoing paper with the

Clerk of the Court using the ECF system, which will send notification of such

filing to all counsel of record.

Respectfully submitted,

/s/ Patrick J. Hurford
Patrick J. Hurford (P82903)
645 Griswold St., Suite 1717
Detroit, MI 48226
Tel: (313) 938-0693
E-mail:  patrick@hurford.law

24