UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,   Case No. 22-cr-20272

        Plaintiff,   Hon. Mark A. Goldsmith

v.

Apollon Nimo et al.,

        Defendants.
_____/

**OPINION & ORDER**
**DENYING DEFENDANT APOLLON NIMO'S MOTION TO DISMISS COUNT ONE**
**(Dkt. 76)**

Before the Court is the motion of Defendant Apollon Nimo to dismiss Count One of the indictment (Dkt. 76).[1] For the reasons that follow, the Court denies the motion.

## I.  BACKGROUND

In May 2022, a grand jury indicted Defendants Nimo and Farrah Bottris Bahoo with one count of conspiracy to commit wire fraud under 18 U.S.C. § 1349. See Indictment (Dkt. 23).  The indictment alleges that Nimo and Bahoo devised a scheme to defraud Fiat Chrysler Automobiles (FCA) by fraudulently providing customers with Employee Purchase (EP) plan discounts on the purchase or lease of new FCA vehicles—thereby increasing the volume of Nimo's sales and compensation—despite knowing that such customers were not eligible for the claimed discount. Id. ¶ 8, 9.

Nimo brings his motion on two grounds.  First, Nimo argues that the conspiracy and wire fraud statutes do not encompass the charged conduct.  Mot. at 1.  Second, Nimo argues that the

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing.  See E.D. Mich. LR 1.1, 7.1(f)(2); LCrR1.1.  In addition to the motion, the briefing includes the Government's response (Dkt. 79).

federal conspiracy and wire fraud statutes are unconstitutionally vague as applied in this case because Nimo was not afforded fair notice that conduct amounting to a breach of contract is a crime. Id. The Court disagrees with Nimo as to both points and denies the motion to dismiss.

## II. ANALYSIS

### A. Timeliness

As an initial matter, Nimo's motion is untimely. The motion was filed on November 7, 2024—more than a year after the general pretrial motion cut-off date of August 31, 2023, see 3/15/2023 order (Dkt. 56), and more than a month after the motion in limine deadline of August 30, 2024, see 8/12/2024 order (Dkt. 69). The motion is therefore untimely, and Nimo must show good cause under Federal Rule of Criminal Procedure 12(c)(3) to allow the motion.

Good cause requires the moving party to "articulate some legitimate explanation for the failure to timely file." United States v. Walden, 625 F.3d 961, 965 (6th Cir. 2010). The motion, however, offers no explanation for the failure to timely file.

At a status conference before the Court on November 7, 2024, Nimo's counsel stated that he only recently discovered the vein of caselaw from the Eleventh and Second Circuits on which the motion rests. But that caselaw is from 2002 and 2004 and was readily available prior to the motion deadline. (See Br. Supp. Mot. at 7–9 (citing United States v. Chandler, 376 F.3d 1303 (11th Cir. 2004) and United States v. Handakas, 286 F.3d 92 (2d Cir. 2002))).[2] Thus, "nothing prohibited counsel from making this motion before the deadline," which in turn means Nimo has not established good cause to excuse its lateness. Walden, 625 F.3d at 965.

---

[2] The motion cites 376 F.3d 1303 for the Chandler decision. However, the Eleventh Circuit rescinded and replaced that decision. See United States v. Chandler, 388 F.3d 796 (11th Cir. 2004). And notably, as discussed below, the final decision removed the holding that Nimo relies on in his motion.

Accordingly, pursuant to Federal Rule of Criminal Procedure 12(c)(3), the motion is untimely. Nonetheless, the Court proceeds to address the merits of the motion.

### B. Merits of the Motion

#### 1. The Indictment Proscribes the Alleged Conduct

Nimo argues that Count One of the indictment should be dismissed because the wire fraud and conspiracy statutes do not proscribe Nimo's conduct. Br Supp. Mot. at 3. A simple reading of the indictment defeats Nimo's contention.

On a defendant's motion to dismiss under Rule 12(b)(3), a court must read the indictment "as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications." United States v. McAuliffe, 490 F.3d 526, 531 (6th Cir. 2007). In addition, "[a]n indictment is to be construed liberally in favor of its sufficiency." Id.

An indictment requires nothing more than "a plain, concise, and definite written statement of the essential facts constituting the offense charged" and a "citation of the statute . . . that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c). An indictment is constitutionally sufficient if it (i) lays out "the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," and (ii) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974). The indictment here meets those requirements. It adequately alleges the elements of the charged crime, puts the Defendants on notice of the charge they must defend against, and allows them to protect against a future prosecution for the same offense.

The indictment charges Nimo and Bahoo with conspiracy to commit wire fraud under 18 U.S.C. § 1349. Indictment ¶¶ 15–18. To convict, the Government must prove that Nimo conspired

3

with another person to commit wire fraud and that he knowingly and voluntarily joined the conspiracy. United States v. Ho, No. 22-1968, 2024 WL 914976, at *6 (6th Cir. March 4, 2024). Pursuant to Sixth Circuit Pattern Jury Instructions, wire fraud has four elements: (1) that the defendant knowingly participated in, devised, or intended to devise a scheme to defraud in order to deprive another of money or property; (2) that the scheme included a material misrepresentation or concealment of a material fact; (3) that the defendant had the intent to defraud; and (4) that the defendant used wire, radio or television communications or caused another to use wire, radio or television communications in interstate or foreign commerce in furtherance of the scheme. See Sixth Circuit Pattern Criminal Jury Instruction 10.02.

Contrary to Nimo's claim, the indictment alleges far more than a mere breach of contract. It alleges a scheme to defraud under 18 U.S.C. §§ 1343, 1349. "A scheme to defraud includes any plan or course of action by which someone intends to deprive another . . . by deception of money or property by means of false or fraudulent pretenses, representations, or promises." United States v. Daniel, 329 F.3d 480, 485–486 (6th Cir. 2003) (punctuation modified). Nimo contends that a scheme to defraud must involve underlying conduct that is itself criminal. Mot. at 1. That is not the law in the Sixth Circuit, and Nimo cites no precedent within the Sixth Circuit for that requirement. In the Sixth Circuit, a scheme to defraud "must be reasonably calculated to deceive," but it does not need to be "fraudulent on its face." United States v. Robinson, 99 F.4th 344, 356 (6th Cir 2024). As the Sixth Circuit has explained, "the 'essence' of fraud is that the victim is persuaded to believe that which is not so," and "it is the scheme itself—the act of acquiring or attempting to acquire the funds through fraudulent means—that the statute punishes." Id. at 355.

The indictment in this case meets the definition of a scheme to defraud. It alleges a years-long course of action in which the Defendants defrauded FCA with respect to the EP program.

4

indictment ¶¶ 8–14. It alleges that the EP program provided only eligible FCA employees and certain members of their family with a discount on the purchase or lease of a new vehicle. Id. ¶ 2. It further alleges that the defendants fraudulently sold and/or used Employee Purchase Control Numbers (EPCN) to obtain that discount for customers whom they knew were not actually eligible for the discount. Id. ¶¶ 8–9. It also alleges that FCA bore the cost of that discount. Id. ¶ 2. And it alleges that Nimo engaged in the scheme for personal gain—to increase his volume of sales and his compensation from the dealership and FCA. Id. ¶ 8. These allegations sufficiently allege a scheme to defraud.

The fact that the indictment alleges more than a mere breach of contract sets it outside the cases Nimo relies on in the motion. To begin, Nimo's reliance on United States v. Chandler, 376 F.3d 1303 (11th Cir. 2004) is misguided because the Eleventh Circuit rescinded and reissued its decision in that case, removing from its final decision Part II.A.2 of its initial opinion—specifically, that a "violation of the rules of a privately promoted game, without more, could not, under the facts of [the] case, amount to mail fraud" and that a "[b]reach of contract, however, even fraudulent breach of contract, is not a crime"—which is the excerpt upon which Nimo's motion primarily relies. See United States v. Chandler, 388 F.3d 796, 798 (11th Cir. 2004).

Further, Chandler is readily distinguishable, and its holding is not applicable to this case. The defendants in Chandler were accused of defrauding McDonald's in connection with a Monopoly-style promotional game. Chandler, 388 F.3d at 799. The indictment in that case charged a single "hub-and-spoke conspiracy." Id. at 806. The central figure who stole the winning game pieces was the hub; the recruiters who received the winning pieces from the central figure and the winners who received the pieces from the recruiters were the spokes. Id. at 807. The central figure was the only person in the hub "and when he moved from spoke to spoke, he moved

5

alone. There was no time at which he and another conspirator moved from spoke to spoke." Id. Thus, the error in Chandler was that it was a rimless hub-and-spoke conspiracy; the defendant winners who were spokes in the alleged conspiracy did not know about each other, that the game pieces had been stolen, or the overall scheme. Id. at 806, 808. "Without knowledge of the underlying criminal object or the existence of the broader plan to which they were a part, the defendants' participation was insufficient to link them to the conspiracy." United States v. Beasley, Case No. 12-20030, 2015 WL 1737478, at *14 (E.D. Mich. Apr. 16, 2015) (discussing and distinguishing Chandler); see also United States v. Bradley, Case No. 405CR059, 2005 WL 8153002, at *1 (S.D. Ga. Dec. 21, 2005) (describing Chandler as a case in which "individuals were duped into participating in a scheme to defraud"). Unlike Chandler, this case is not alleged to be a hub-and-spoke conspiracy. In addition, the Defendants in this case are alleged to have known the aim of the conspiracy and actively contributed to its success. Indictment ¶¶ 8–14. Thus, the grounds for vacating the convictions in Chandler are not applicable here; it provides no support for dismissing the indictment in this case.

Nimo's reliance on United States v. Handakas, 286 F.3d 92 (2d Cir. 2002), is similarly misplaced. Handakas concerned whether 18 U.S.C. § 1346, honest services fraud, was unconstitutionally vague as applied in that case. Id. at 112. The instant case does not allege honest services fraud, nor a deprivation of honest services. Further, the Second Circuit later overruled Handakas in part, explaining that while "an intangible right to honest services did not arise out of the contract at issue" (which involved a contractor who violated an agreement with the state school authority to pay the prevailing wage to his employees), it is not the case that "the intangible right to honest services . . . can never arise in that context." United States v. Rybicki, 354 F.3d 124, 144 (2d Cir. 2003) (emphasis in original). In short, the possibility of civil liability for a breach of

6

contract does not foreclose a criminal prosecution where the alleged conduct meets the definition of a scheme to defraud under the relevant statute, whether it be the honest services fraud statute at issue in Handakas or the conspiracy to commit wire fraud statute at issue in this case.

Here, accepting the factual allegations in the indictment as true, as the Court must, the indictment alleges that the Defendants conspired with each other to engage in a scheme to defraud FCA, by means of false or fraudulent pretenses or representations, to obtain money, which involved the use of interstate wire communications in furtherance of the scheme. The Court finds that the allegations in the indictment more than satisfy the constitutional and Fed. R. Crim. P. 7(c) pleading requirements and thus adequately allege a conspiracy to commit wire fraud under 18 U.S.C. § 1349. Nothing in Nimo's motion shows to the contrary.

### 2. Constitutionality of the Statute

Nimo also argues that the federal conspiracy to commit wire fraud statute is unconstitutionally vague-as-applied in this case because the statute purportedly does not provide him fair notice that it applies to the conduct alleged in the indictment. Br. Supp. Mot. at 3. The Fifth Amendment's Due Process clause "guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes." Sessions v. Dimaya, 584 U.S. 148, 156 (2018). The conspiracy to commit wire fraud statute provides ample fair notice that it proscribes schemes to defraud, as alleged in the indictment.

Specifically, the conspiracy to commit wire fraud statute criminalizes agreements to engage in a scheme to defraud by means of false or fraudulent pretenses, representations, or promises for the purpose of obtaining money or property using electronic signals or communications on interstate wires. 18 U.S.C. §§ 1343, 1349. "There is nothing vague about the wire fraud statute[.]" United States v. Jansen, Case No. 15-CR-214, 2015 WL 5190645, at *2

(M.D. Fla. Sept. 4, 2015). The statute plainly proscribes an agreement to participate in a scheme to defraud.

Nimo contends that he was not afforded fair notice that conduct "amounting to a breach of contract" could expose him to criminal prosecution under the federal conspiracy and wire fraud statutes. Mot. at 1. His argument is misguided because, as explained above, it mischaracterizes what is alleged in the indictment. Again, for purposes of the motion, the Court must accept the factual allegations in the indictment as true and it must construe the allegations in a practical sense with all the necessary implications. McAuliffe, 490 F.3d at 531. In doing so, the Court finds, as detailed above, that the indictment alleges a scheme to defraud. The indictment alleges material misrepresentations intended to defraud FCA about customers' eligibility for employee-discounted pricing, spanning several years, the purpose of which was for Nimo to profit by increasing his sales volume and compensation at FCA's expense (as the cost of the fraudulently applied discount was passed on to FCA). "It is the scheme itself that forms the basis for the Indictment, not any collateral contract breaches." United States v. Zhou, Case No. 19-CR-163, 2020 WL 708310, at *3 (S.D. Ohio Feb. 12, 2020). Nimo attempts to recast the factual allegations in the indictment as a breach of contract, but "[t]he simple fact that [a victim] may have brought a civil contract claim against [d]efendants does not immunize [d]efendants' conduct from criminal prosecution if that conduct meets the elements of the criminal statutes as well." United States v. Ali, 620 F.3d 1062, 1071 (9th Cir. 2010) (emphasis in original). Here, the factual allegations, taken as true, establish a scheme to defraud. Whether a civil remedy might exist is irrelevant and does not make this criminal prosecution improper.

With respect to fair notice, the statute at issue gives more than adequate notice of the conduct it prohibits. The wire fraud statute "applies to 'any' scheme or artifice to defraud,

8

regardless of the type of scheme." United States v. Jasen, 693 F. App'x 801, 802 (11th Cir. 2017). "Ignorance of the fact that one's conduct is a violation of the law is no defense to criminal prosecution." United States v. Nelson, 712 F.3d 498, 508 (11th Cir. 2013). Further, "[t]hat the facts alleged may not be a 'prototypical' wire fraud scheme does not necessarily mean that the wire fraud statute is unconstitutional as applied." United States v. Jansen, Case No. 15-CR-214, 2015 WL 5190645, at *2 (M.D. Fla. Sept. 4, 2015) (punctuation modified). Indeed, "since the wire fraud statute requires mens rea, it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware." Id. at *2 (punctuation modified).

There is nothing unconstitutional about the application of the conspiracy to commit wire fraud statute to the conduct alleged in the indictment. Others who have fraudulently obtained discounts through false pretenses have faced prosecution under the federal wire fraud statute. See, e.g., United States v. Ali, 620 F.3d at 1064–1065, 1068 (affirming wire and mail fraud convictions where defendants fraudulently obtained software at educational-user discounted price). The criminal activity in this case is straightforward. The Defendants are charged with defrauding FCA through false pretenses and representations and with arranging for the sale or lease of vehicles involving the fraudulent use of discounts, knowing that the customer was not eligible for the claimed discount. The Defendants profited from the sales and did so at FCA's expense for several years. Nimo's fair-notice void-for-vagueness argument fails.

## I. CONCLUSION

For the reasons discussed above, Nimo's motion to dismiss count one (Dkt. 76) is denied.

SO ORDERED.

Dated: March 3, 2025            s/Mark A. Goldsmith
    Detroit, Michigan           MARK A. GOLDSMITH
                                            United States District Judge